Filed 7/28/16  In re R.F. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re R.F., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br>v.<br>R.F.,<br>　　　Defendant and Appellant. | A145723<br><br>(San Francisco City and County Super. Ct. No. JW14-6171) |

R.F. appeals from the juvenile court's disposition order removing him from his mother's custody and placing him in a group home.  He contends the court's findings that out of home placement was in his best interest and that reasonable efforts had been made to prevent the need for removal were not supported by substantial evidence.  He further contends that a probation condition requiring him to disclose passwords to his electronic devices and accounts is constitutionally overbroad and not reasonably related to his offense or future criminality.  We conclude the probation condition must be modified and otherwise affirm the orders.

**STATEMENT OF THE CASE AND FACTS**

On June 16, 2014, a juvenile wardship petition (Welf. & Inst. Code, § 602)[1] was filed alleging three counts based on appellant, then 14 years of age, having unlawfully

---

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

carried a loaded concealable firearm with a filed-off serial number in violation of Penal Code sections 25850, subdivision (c)(4) (count 1), 25400, subdivision (a)(2) (count 2), and 23920 (count 3).  On June 15, 2014, appellant had been apprehended by police officers at the Alemany Housing Projects with a loaded firearm in his pocket.

On July 14, 2014, appellant admitted count 1, amended to allege violation of Penal Code section 29610, possession of a concealable firearm by a minor, and the other counts were dismissed.  On July 28, the juvenile court declared appellant a ward and placed him on probation, to reside in his mother's home, with GPS monitoring and intensive supervision.  Among the conditions of probation, appellant was ordered to participate in the GPS monitoring program and "intensive supervision/clinical services," observe a 6:00 p.m. curfew, stay away from the Alemany Projects, and complete the WIMP (Weapons in Minors Possession) program.

In August 2014, the probation officer reported that GPS Incident Reports dated July 28 through August 8, indicated appellant frequently was out significantly past curfew.  His mother explained that she could account for appellant's whereabouts and that he did not always get home by 6:00 p.m. because he attended football practice after his mandated community service.  A report filed on August 26, 2014, indicated curfew compliance was "progressing" but GPS indicated appellant was not home between 8:00 p.m. and midnight on four dates.  On August 27, the court ordered probation to remove appellant's GPS monitor, with the right to replace it if appellant violated curfew or other court orders.  As of the end of September, appellant was reported to be complying with probation conditions, attending school regularly, engaging in his assigned programs and refraining from drug use.

On January 7, 2015, the probation officer filed a notice of motion to revoke probation (§ 777, subd. (A)(2)), alleging that appellant had failed to comply with his curfew.  About 10:20 p.m. on New Year's Eve, appellant had been on the 700 block of Market Street with a group known to frequent the Sunnydale Housing Project, including three individuals who were known to the probation department.  A fight broke out and several shots were fired.  One of the three individuals, a juvenile with a history of firearm

2

possession, was shot in the buttocks and ankle, and a bystander was also shot. One of the other individuals appellant was with was arrested after the shooting for possession of two firearms. The probation report indicated that appellant was having behavioral issues at school, having been kicked out of class "numerous" times the past semester for disruptive behavior and "disrespecting" staff.

At a detention hearing on January 8, 2015, the court placed appellant on a home supervision program and ordered, among other things, that he not associate with and stay away from the three individuals noted above, the Sunnydale Housing Project and "Tre 4" gang members, and abide by a 5:00 p.m. curfew unless he was with his parent, with an adult approved by both his parent and the probation officer, or participating in an organized and supervised activity approved by both his parent and the probation officer, and return to GPS monitoring. The probation officer later noted that he had been aware since before the gun case that led to appellant's wardship that appellant associated with members of the Tre 4 gang from the Sunnydale Housing Project.

On February 10, 2015, the court allowed appellant to live with an uncle in Oakley, California, due to his mother's concerns for his safety in San Francisco, and probation was authorized to remove appellant's GPS monitor.

On March 17, 2015, appellant admitted the probation violation.

On April 25, 2015, appellant was detained by police officers on the 900 block of Market Street while in the company of three: a 17-year-old who was found to be in possession of a gun, an 18-year-old who was an associate of the Tre 4 gang and known to frequent the Sunnydale Housing area, and a 22-year-old. The incident report indicated that appellant was released to the 22-year-old pursuant to the mother's direction to the officers. Later, the mother told the probation officer that appellant had been shopping with his aunt in downtown San Francisco. The probation officer was concerned that the mother had directed that appellant be released to the 22-year-old and not to his aunt, as well as that the mother said she thought it was okay for appellant to be in San Francisco when she had been told he was not allowed in San Francisco without prior approval from the probation officer. Appellant had also been told to stay away from San Francisco

3

unless given permission by the probation officer, and to stay away from Market Street. The uncle told the probation officer that his wife had taken appellant to San Francisco to go shopping for prom and that he (the uncle) had forgotten to get prior approval for appellant to come to San Francisco.

In the report for the April 30, 2015 disposition hearing, the probation officer stated that appellant was "making progress" with his transition to living in Oakley. Since enrollment at his new high school, he had attended 16 out of 17 days, with one excused absence, and he was passing most of his classes and training with the football team.[2] His uncle did not report any behavioral issues.

The probation officer, however, noted a number of "red flags" for the court to consider: Appellant was on probation for possession of a gun and was at risk of being shot due to his associations with the Tre 4 gang and those of his older brother, who was also on probation for gun possession and had recently been injured in what appeared to be a gang assault, and appellant had been placed with his uncle due to his mother's safety concerns but returned to San Francisco with the approval of his mother, who also appeared to approve of his "hanging out with negative peers." The probation officer noted that appellant's brother had been arrested a few weeks before for possession of three guns in a vehicle, along with the 18-year-old with whom appellant was found on April 25, and a third person. On the brother's phone, there was a video of the brother holding a silver gun in a car with appellant sitting in the back seat.

The probation officer stated that while he had indicated at the last court hearing that the department would likely recommend placement with the uncle in Oakley, due to the recent incident, the fact that appellant had been "given a break in January" and concern for appellant's safety, the department was recommending commitment to the Log Cabin Ranch School (LCRS). The probation officer believed this program was the best option because it would keep appellant safe and away from San Francisco and

_____

[2] Prior to the move to Oakley, appellant had been attending his former high school regularly since starting high school on August 21, 2014. He had had truancy issues in middle school.

4

provide him with needed services and programs, including a mentor, a therapist, and the opportunity to continue his high school education. The probation officer stated, "The undersigned feels that placing the minor at LCRS will save his life."

Appellant did not appear for the hearing on April 30, 2015; the probation officer reported that he failed to appear "because possible remand by this court." The probation officer stated that appellant was reportedly going to attend prom that week and that this plan had not been approved by the probation officer. On May 4, 2015, appellant was remanded into custody, and on May 6, 2015, the court denied a motion for release on home detention.

Prior to the disposition hearing, arguing that on April 25 he had coincidentally run into the individuals with whom he was found and had only a brief conversation with them before the police approached, appellant asked the court to allow him to return to living with his uncle or, if that request was denied, to place him at the San Francisco Boys Shelter, a group home which had accepted him for placement. At the hearing on June 2, appellant no longer sought placement at the Boys Shelter, only with his uncle. The court stated at the outset that it would require a structured out of home program first, then would place appellant with his uncle if he did well and at LCRS if he did not succeed in the initial program. Appellant's counsel urged that appellant had been doing very well in that he had had only the one probation violation for violating curfew; he had never tested positive for drugs, his GPS monitoring device had been removed, he was playing football, he had completed his community service, he was doing well in school and had not had truancy issues since being on probation, and the placement with his uncle had been at his mother's request, not because the probation officer felt out of home placement was necessary. Counsel argued that the April 25 incident was just a matter of miscommunication, noting that the court had never ordered appellant to stay away from Market Street or San Francisco and that appellant and his mother did not recall the probation officer directing appellant to stay away. Appellant had been in San Francisco shopping with his aunt, was cooperative with the police when detained, and was released, and while his mother was initially unable to reach the aunt, after the mother picked

5

appellant up they made contact with the aunt and went back to Oakley. Appellant did not attend the prom because he expected the probation officer would not allow him to, as it would go past curfew, and he wanted to show the court he was taking his probation conditions seriously.

The probation officer testified that appellant and his mother were aware of his directive to obtain his permission before appellant could come to San Francisco, as he had spoken with the mother after previous incidents in which appellant came to San Francisco for a Department of Motor Vehicle appointment, and the probation officer had given permission for appellant to come to the city for a funeral. The recommendation for commitment to LCRS was suggested by the Multidisciplinary Team, which involved participants from five or six agencies. The probation officer saw the case as being about prevention, explaining that appellant is "a good kid" but would get in more trouble if he continued to "hang out with the wrong people." The district attorney shared this concern and did not believe the April 25 incident was the result of a "miscommunication" or that appellant just "happened to cross the street and find these people right at the exact time that the police showed up."

At the conclusion of the hearing, the court offered appellant the choice of placement at LCRS, as the prosecutor and probation officer urged, or at an out of home placement outside San Francisco with resort to LCRS "[i]f he messes up." Appellant wanted to avoid LCRS and opted for out of home placement, and his mother requested placement at the group home Mary's Help. The court ordered out of home placement, recommending Mary's Help.

Appellant was placed at Mary's Help on June 23, 2015.

He filed a timely notice of appeal on July 16, 2015.

## DISCUSSION

### I.

Appellant argues that the disposition order must be reversed because there was not substantial evidence to support the court's findings that out of home placement was in his best interest and that reasonable efforts had been made to prevent the need for removal.

6

" 'A juvenile court's commitment order may be reversed on appeal only upon a showing the court abused its discretion.' " (*In re Jonathan T.* (2008) 166 Cal.App.4th 474, 485, quoting *In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329-1330; *In re Asean D.* (1993) 14 Cal.App.4th 467, 473.) " ' "We must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them." ' " (*In re Robert H.,* at p. 1330, quoting *In re Lorenza M.* (1989) 212 Cal.App.3d 49, 53.) "All dispositional orders in a wardship case must take into account the best interests of the child and the rehabilitative purposes of the juvenile court law. (See Welf. & Inst. Code, § 202, subd. (b).)" (*In re S.S.* (1995) 37 Cal.App.4th 543, 550.) "Under section 202, juvenile proceedings are primarily 'rehabilitative' (*id.,* subd. (b)), and punishment in the form of 'retribution' is disallowed (*id.,* subd. (e)). Within these bounds, the court has broad discretion to choose probation and/or various forms of custodial confinement in order to hold juveniles accountable for their behavior, and to protect the public. (*Id.,* subd. (e).)" (*In re Eddie M.* (2003) 31 Cal.4th 480, 507.) "[J]uvenile placements need not follow any particular order under section 602 and section 777, including from the least to the most restrictive." (*In re Eddie M.,* at p. 507.)

Appellant argues that the order for out of home placement was not supported by substantial evidence in that it was based only on one curfew violation and one unauthorized visit to San Francisco in which appellant was found with negative peers. He points out that there was no general order for him to stay away from San Francisco and no indication he was currently involved with weapons or unlawful activity, and that the probation department did not provide services to help his uncle and aunt comply with the terms of his probation.

Appellant maintains that the probation department had a statutory duty to provide reasonable services to keep him with his family and, to support an out of home placement, the burden of showing by clear and convincing evidence that reasonable services were provided to prevent or eliminate the need for removal. His sole authority for the latter proposition is *In re Monica C.* (1994) 31 Cal.App.4th 296, 306, 310, in

7

which a judgment terminating parental rights was reversed due to deficiencies in the reunification plan provided to the mother. *Monica C.* noted that section 361.5, which concerns family reunification services in dependency cases, requires " '[a] good faith effort' to provide reasonable services responding to the unique needs of each family," and section 366.21 "requires 'clear and convincing evidence' that such services have been offered to the parents" before the court can order a section 366.26 hearing to consider termination of parental rights.[3] (*In re Monica C.,* at p. 306.) These statutes pertaining to dependency cases and proceedings to terminate parental rights are inapplicable to the present case.

Removal of a ward of the court (or a dependent child) from parental custody is governed by section 726, which provides that "no ward or dependent child shall be taken from the physical custody of a parent or guardian, unless upon the hearing the court finds one of the following facts: [¶] (1) That the parent or guardian is incapable of providing or has failed or neglected to provide proper maintenance, training, and education for the minor. [¶] (2) That the minor has been tried on probation while in custody and has failed to reform. [¶] (3) That the welfare of the minor requires that custody be taken from the minor's parent or guardian." The statute contains no requirement that the probation department prove by clear and convincing evidence that reasonable efforts have been made to prevent or eliminate the need for removal. Nor does the statute require the court to make a finding that reasonable efforts to prevent or eliminate the need for removal have been made, although the court here did make that finding. The other statutes appellant cites—sections 636, 636.1, 706.6 and 727.4, and title 42 of the United States Code section 671(a)(15) —discuss requirements for reasonable efforts to preserve

---

[3] *In re Monica C., supra,* 31 Cal.App.4th at page 304 specifically referenced section 366.21, subdivision (g)(3), which then provided that one of the court's options if a dependent child is not returned to the parents at the 12-month status review hearing is to order a hearing pursuant to section 366.26 "if there is clear and convincing evidence that reasonable services have been provided or offered to the parents." (See Stats. 1995, ch. 540 (Assem. Bill No. 1523) § 2.) The current version of section 366.21 contains the same requirement in a differently numbered subdivision. (§ 366.21, subd. (g)(4).)

and reunify families but do not require a showing by clear and convincing evidence that such reasonable efforts have been made before a ward can be removed from a parent's physical custody at disposition.[4]

---

[4] Section 636 applies at detention: A probation officer recommending detention must submit documentation that continuance in the home is contrary to the minor's welfare and that reasonable efforts were made to prevent or eliminate the need for removal, and the nature and results of services provided must be submitted in the detention report or within 60 days of the date of detention. (§ 636, subd. (c).) If the minor cannot be returned to the parent's home, the court must make findings including "[w]hether reasonable efforts have been made to safely maintain the minor in the home of his parent or legal guardian and to prevent or eliminate the need for removal of the minor from his or her home." (§ 636, subd. (d)(2)(B).) If the minor cannot be returned home, the court must order the probation officer to provide services to enable the parent to "obtain any assistance as may be needed to enable the parent . . . to effectively provide the care and control necessary for the minor to return to the home." (§ 636, subd. (d)(3)(A).)

Section 636.1 pertains to the case plan the probation officer must create when a minor is detained. (§ 636.1, subd. (a).) If the probation officer believes reasonable efforts by the minor, parent and probation officer will enable the minor to safely return home, the case plan must focus on such efforts (§ 636.1, subd. (b)); if the probation officer believes foster care placement is the most appropriate disposition, the case plan must include information required by section 706.6 (§ 636.1, subd. (c)).

Section 706.6 requires the probation officer to consider the recommendations of the "child and family team" (§ 706.6, subd. (a)) and to include in the case plan, among other things, "[d]ocumentation of the preplacement assessment of the minor's and family's strengths and service needs showing that preventive services have been provided, and that reasonable efforts to prevent out-of-home placement have been made" (§ 706.6, subd. (c)(2)), goals and activities "designed to enable the safe return of the minor to his or her home" (§ 706.6, subd. (f), and, "when out-of-home services are used and the goal is reunification," a description of services that were provided to prevent removal and to be provided to assist in reunification (§ 706.6, subd. (m)).

Section 727.4 provides the definition of "reasonable efforts" as used in articles 15 through 18 (temporary custody and detention, commencement of proceedings, hearings, and judgments and orders, respectively, in wardship cases): "(A) Efforts made to prevent or eliminate the need for removing the minor from the minor's home. [¶] (B) Efforts to make it possible for the minor to return home, including, but not limited to, case management, counseling, parenting training, mentoring programs, vocational training, educational services, substance abuse treatment, transportation, and therapeutic day services. [¶] (C) Efforts to complete whatever steps are necessary to finalize a

In any event, the evidence supports the finding that reasonable efforts were made. Appellant acknowledges that services were provided while he was living with his mother in San Francisco. His argument is that the record does not indicate his uncle was provided any services "to help him better supervise appellant and eliminate the problem that led to the probation violation, namely that appellant was allowed to visit San Francisco and stay out after his curfew." The offense that led to appellant's wardship was serious: Possession of a loaded, concealed firearm. He was afforded the opportunity to remain at his mother's home on probation and, as he acknowledges, was provided various services. The probation violation that led to his out of home placement was the New Year's Eve incident, which occurred while appellant was still living in San Francisco. The probation officer and the court initially gave appellant another chance to succeed on probation, although this incident was not the insignificant violation of curfew he characterizes it to be: He was in the company of individuals with criminal histories including firearm possession, one of whom was in possession of firearms when two people were shot.

Appellant moved to his uncle's home in Oakley at his mother's request, for his safety, and with the probation officer's approval, not because of a finding that out of home placement was necessary. Appellant then disregarded his probation officer's directives by coming to San Francisco, which he had been directed not to do without prior approval, and specifically to the Market Street area he had also been directed not to visit without prior approval, demonstrating the "impulse and judgment problems" to which the court referred by associating with an associate of the Tre 4 gang who

permanent plan for the minor. [¶] (D) In child custody proceedings involving an Indian child, 'reasonable efforts' shall also include 'active efforts' as defined in Section 361.7."

Finally, title 42 of the United States Code section 671(a)(15), provides that in order for a state to be eligible for federal payments for foster care and adoption assistance, it must have a plan approved by the Secretary which meets various requirements, including that "reasonable efforts shall be made to preserve and reunify families [¶] prior to the placement of a child in foster care, to prevent or eliminate the need for removing the child from the child's home; and [¶] to make it possible for a child to safely return to the child's home." (42 U.S.C. § 671(a)(15)(B).)

frequented the Sunnydale Housing Projects and a juvenile who was in possession of a firearm.[5]

Aside from the April 25 incident, appellant was apparently complying with the conditions of probation while living at his uncle's home. As we have said, the curfew violation occurred while he was still living with his mother. With respect to the April 25 incident, the probation officer had directed both appellant and his mother that he was not to come to the specified portion of Market Street, or to San Francisco, without prior approval; while appellant's mother denied this, the court expressly stated that it believed the probation officer. Appellant's uncle certainly knew about the prior approval requirement, as indicated by his telling the probation officer after the April incident that he had forgotten to get approval before his wife took appellant to San Francisco, and the uncle did not report appellant having any behavioral issues. Appellant does not suggest what reasonable efforts probation could or should have made to help his uncle better supervise him.

The evidence clearly supports the court's finding that out of home placement was in appellant's best interest. Appellant was released on probation after a serious initial offense, and again after being found, in violation of his curfew, with a group of people involved in a fight and a shooting, in the company of individuals with extensive criminal histories including firearm possession, one of whom was in possession of firearms. His safety was clearly at risk, as evidenced by his mother's request for him to live with his uncle outside San Francisco and his continued association with people involved with firearms and gangs—including his older brother, who had been arrested for possession of firearms, was documented in a photograph holding a firearm in a car in which appellant was a passenger, and had been beaten up in what appeared to be a gang-related incident. Despite appellant's progress—completing programs required by the court, attending school regularly, playing football—he demonstrated a continued interest in, or inability to

---

[5] Appellant's probation conditions required him to stay away from the Sunnydale Housing Projects and from Tre 4 gang members.

stay away from, peers involved with firearms and gangs. The probation officer and prosecutor both viewed LCRS as a potentially life-saving intervention for appellant. The judge explained that she knew appellant and thought he was a "good," "smart," "sensitive" and "thoughtful" young man with "promise"—which was why she had released him after his initial firearm offense—but that he also had "an admiration for guns and ammo" and affinity for young men who had gotten themselves in trouble and were a negative influence. The judge was convinced that appellant was in need of a structured program, yet agreed to order a less restrictive placement than the one recommended by the probation officer in order to give appellant yet another chance to escape the negative influences that were clearly jeopardizing his safety. There was no abuse of discretion.

## II.

One of the probation conditions imposed by the juvenile court was that appellant provide to the probation officer "passwords for digital devices in your possession or control and social media accounts." Appellant contends this condition was constitutionally overbroad and not reasonably related to his offense or future criminality.

Conditions of probation are reviewed for abuse of discretion. (*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).) "Generally, '[a] condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality. . . ." [Citation.]' ([*People v.*] *Lent* [(1975)] 15 Cal.3d [481,] 486.) This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term. (*Id.* at p. 486, fn. 1; see also *People v. Balestra* (1999) 76 Cal.App.4th 57, 68–69 . . . .) As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality. (See [*People v.*] *Carbajal* [(1995)] 10 Cal.4th [1114,] 1121.)" (*Olguin,* at pp. 379-380.)

12

"The permissible scope of discretion in formulating terms of juvenile probation is even greater than that allowed for adults." (*In re Victor L.* (2010) 182 Cal.App.4th 902, 910 (*Victor L.*).) " 'The state, when it asserts jurisdiction over a minor, stands in the shoes of the parents' (*In re Antonio R.* (2000) 78 Cal.App.4th 937, 941), thereby occupying a 'unique role . . . in caring for the minor's well-being.' (*In re Laylah K.* (1991) 229 Cal.App.3d 1496, 1500.) In keeping with this role, section 730, subdivision (b), provides that the court may impose 'any and all reasonable [probation] conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.' " (*Victor L.,* at pp. 909-910.) " '[E]ven where there is an invasion of protected freedoms "the power of the state to control the conduct of children reaches beyond the scope of its authority over adults . . . . " ' (*Ginsberg v. New York* (1968) 390 U.S. 629, 638.) This is because juveniles are deemed to be 'more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed.' (*Antonio R.*, . . . at p. 941.) Thus, ' " 'a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court.' " ' (*In re Sheena K.* [(2007)] 40 Cal.4th 875, 889 (*Sheena K.*); see also *In re R.V.* (2009) 171 Cal.App.4th 239, 247; *In re Frank V.* (1991) 233 Cal.App.3d 1232, 1242-1243 [rule derives from court's role as *parens patriae*].)" (*Victor L.,* at p. 910.)

The parameters of juvenile probation search conditions involving electronic devices and Internet data are currently a subject of dispute among the Courts of Appeal, and the issue is pending before the California Supreme Court in a number of cases.[6]

---

[6] *In re Ricardo P.* (2015) 241 Cal.App.4th 676, rev. granted February 17, 2016 (S230923); *In re Patrick F.* (2015) 242 Cal.App.4th 104, rev. granted February 17, 2016 (S231428); *In re Alejandro R.* (2015) 243 Cal.App.4th 556, rev. granted March 9, 2016 (232240); *In re Mark C.* (2016) 244 Cal.App.4th 520, rev. granted April 13, 2016 (232849); *In re A.S.* (2016) 245 Cal.App.4th 758, rev. granted May 25, 2016 (S233932).

Appellant relies upon our decision in *In re Erica R.* (2015) 240 Cal.App.4th 907, 910 (*Erica R.*), which involved a probation condition requiring a juvenile who had admitted misdemeanor possession of ecstasy to submit to search of her "electronics" and provide her passwords to her probation officer. The offense did not involve use of any electronic device, and the minor's attorney represented that the minor did not have a cell phone. (*Ibid.*) The juvenile court believed the condition was reasonably related to future criminality because it provided a way to keep track of the minor's drug usage, explaining that in its experience, " 'many juveniles, many minors who are involved in drugs tend to post information about themselves and drug usage.' " (*Id.* at pp. 910, 913.) After finding the first two *Lent* factors met because the condition had no relationship to the minor's offense and typical use of electronic devices and social media is not criminal, we rejected the juvenile court's justification: " '[B]ecause there is nothing in [Erica's] past or current offenses or [her] personal history that demonstrates a predisposition' to utilize electronic devices or social media in connection with criminal activity, 'there is no reason to believe the current restriction will serve the rehabilitative function of precluding [Erica] from any future criminal acts.' " (*Id.* at pp. 912-913, quoting *In re D.G.* (2010) 187 Cal.App.4th 47, 53.)

We contrasted the situation in *Erica R., supra,* 240 Cal.App.4th 907 with *People v. Ebertowski* (2014) 228 Cal.App.4th 1170, in which the adult defendant was convicted of making criminal threats to a police officer. There, the condition requiring the defendant to submit his electronic devices to search, with passwords to the devices and social media accounts, was reasonably related to the risk of future criminality because the threats had included references to the defendant's gang membership, he had promoted his gang through his social media account, and his gang membership was related to future criminality in that his " 'association with his gang gave him the bravado to threaten and resist armed police officers.' " (*Erica R.,* at pp. 914-915, quoting *Ebertowski,* at pp. 1173, 1176-1177.)

Division Three of this court reached the same result as *Erica R.* in the case of a minor who admitted committing a petty theft. (*In re J.B.* (2015) 242 Cal.App.4th 749

14

(*J.B.*).)  The electronic search was imposed by the same juvenile court judge as in *Erica R.,* for the same reason.  (*J.B.*, at p. 752.)  The *J.B.* court found there was "no showing of any connection between the minor's use of electronic devices and his past or potential future criminal activity" and therefore no reason to believe the condition would serve the purpose of preventing the minor from committing future criminal acts.  (*Id.* at pp. 756-757.)

      *J.B.* disagreed with the reasoning of two of the cases currently pending Supreme Court review, both of which also involved electronics search conditions imposed by the same juvenile court judge as a means to supervise minors for whom there was some indication of illegal drug use in the record.  (*J.B., supra,* 242 Cal.App.4th at p. 757, discussing *In re Ricardo P.*, *supra,* 241 Cal.App.4th 676, and *In re Patrick F., supra,* 242 Cal.App.4th 104.)  Those cases were based on *Olguin*, *supra,* 45 Cal.4th at pages 380-381, which upheld a condition of probation that had no relationship to the defendant's offense but would "enable[] a probation officer to supervise his or her charges effectively."  The condition in *Olguin* required the adult defendant to keep his probation officer informed of the presence of pets at his residence.  The court explained that this requirement would facilitate unannounced visits to and searches of a probationer's residence, which are part of "proper supervision" of a probationer, by enabling the probation officer to take precautions against possible threats posed by an animal, as well as avoid having a pet create an opportunity for destruction of evidence of unlawful activity by alerting the probationer to the officer's approach.  (*Id.* at p. 382.)  " 'By allowing close supervision of probationers, probation search conditions serve to promote rehabilitation and reduce recidivism while helping to protect the community from potential harm by probationers.'  (*People v. Robles* (2000) 23 Cal.4th 789, 795.)  A condition of probation that enables a probation officer to supervise his or her charges effectively is, therefore, 'reasonably related to future criminality.' "  (*Olguin,* at pp. 380-381.)

      *J.B.* questioned whether *Olguin* "justifies a probation condition that facilitates general supervision of a ward's activities if the condition requires or forbids noncriminal

15

conduct bearing no relation to the minor's offense that is not reasonably related to potential future criminality as demonstrated by the minor's history and prior misconduct." (*J.B., supra,* 242 Cal.App.4th at p. 757.) The *J.B.* court stated that "such a broad condition cannot be squared with the limitations imposed by *Lent, supra,* 15 Cal.3d at page 486, and in some cases may exceed constitutional limitations. (See [*Sheena K., supra,*] 40 Cal.4th [at p.] 890.)" (*J.B.,* at p. 757.) " 'Courts have recognized that a "minor cannot be made subject to an automatic search condition; instead, such condition must be tailored to fit the circumstances of the case and the minor." ' " (*J.B.,* at p. 756, quoting *Erica R., supra,* 240 Cal.App.4th at p. 914.)

The *Olguin* court made a point of explaining that the particular condition at issue—requiring a probationer to keep the probation officer informed of the presence of pets—was both a reasonable means of facilitating the general search condition and reasonable in that it did not impose an undue burden on the probationer. (*Olguin,* 45 Cal.4th at p. 382.) We do not read *Olguin* as holding that *every* condition that could enable a probation officer to supervise a minor more effectively is necessarily "reasonably related to future criminality." (*Olguin,* at p. 381.) An electronic search condition that requires a minor to provide access to the wide range of data potentially stored on electronic devices and accessible on password-protected Internet sites authorizes a tremendous intrusion into the minor's privacy, imposing a burden vastly different in nature and extent from what was at issue in *Olguin.* Unlike the condition in *Olguin*, which only facilitated a residence search condition the defendant did not challenge, the condition here adds significantly to the scope of the areas subject to warrantless search. As the court observed in *Riley v. California* (2014) 134 S.Ct. 2473, 2491, "a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is." As with adult probationers, a search condition diminishes but does not altogether foreclose a juvenile

16

probationer's reasonable expectation of privacy. (*In re Jaime P.* 2006) 40 Cal.4th 128, 136.)

Moreover, even when an electronic search condition bears a reasonable connection to the risk of future criminality, it must be tailored to a minor's particular circumstances. *In re P.O.* (2016) 246 Cal.App.4th 288, 298, for example, upheld an electronics search condition justified by the need to supervise the juvenile's drug use but modified it to apply only to cell phone data and electronic accounts "reasonably likely to reveal whether he is boasting about drug use or otherwise involved with drugs." In *In re Malik J.* (2015) 240 Cal.App.4th 896, the minor's offenses were robberies, one of which involved an iPhone, and Division Three of this court found it reasonable to require the minor to provide passwords for electronic devices in his custody and control as a means for officers to determine the ownership of such devices. (*Id.* at pp. 903-904.) But the court limited the scope of the permissible search: "Officers must be able to determine ownership of any devices in a probationer's custody or within his or her control, and search them if they belong to the probationer or if officers have a good faith belief that he or she is a permissive user. But in performing such searches, officers must show due regard for information that may be beyond a probationer's custody or control or implicate the privacy rights of the probationer or third parties. Officers should not be allowed to conduct a forensic examination of the device utilizing specialized equipment that would allow them to retrieve deleted information that is not readily accessible to users of the device without such equipment. They should also first disable the device from any Internet or cellular connection. These measures will limit a search to information that is stored on the device and accessible to the probationer, and thus in the probationer's possession and subject to his or her control." (*Ibid.*) The court noted that there was no indication the minor had used email, texting or social media to facilitate his offenses and expressed no opinion as to whether the broad electronics condition would have been valid if he had. (*Id.* at p. 904, fn. 2.)

In the present case, the probation report's list of recommended conditions began as follows: "With the advancement in technology through the Internet, social media has

17

become an instrument to facilitate crimes, and to communicate with victims, witnesses and accomplices/associates. Access to probationer's digital/electronic devices and social media accounts may be necessary to check for continued criminality. Therefore, it is recommended that the court impose the disclosure of passwords for digital/electronic devices and social media accounts. [¶] That [appellant] disclose passwords for digital devices in his possession or control and for his social media accounts to probation officer and law enforcement officers/peace officers on demand without warrants or suspicion. [¶] That any digital or electronic device in [appellant] possession or control is subject to search at any time by a probation officer and law enforcement officer/peace officers on demand without warrants or suspicion.

At disposition, when defense counsel objected that the probation officer was putting this electronics condition on "every case," the court disagreed, stating, "I haven't seen it with everyone but I've seen it when there's a concern about hanging around the wrong people who are bad influences, especially in terms of gangs like the Tre 4 gang." The court explained, "I think this young man either knowingly or unwittingly has been hanging around Tre 4 gang members and his brother is apparently an associate Tre 4 gang member. [¶] This young man has been in possession of a gun and ammo. This young man has been with people in violation of his curfew, and those people have had guns, and those people, at least one, was a known gang member. And these are gang conditions here so they're reasonably related. [¶] Given that [appellant], as good a kid as he is, has been hanging out with what I'd like to call no-good nicks, bad influences who also are gang associates, and gang associates often do gang activity on the Internet, through social media accounts and display gang affiliation through photos, through pictures with weapons, on their iPhones, cell phones and on their Internet media accounts. [¶] So I think that there's a . . . reasonable relationship to a search of those accounts because of the gang activity of people [appellant] has been with, even though he's not a gang member and he's not a gang associate."

The clear intent of the court in imposing the electronic search condition was to facilitate the probation department's supervision of appellant with respect to the primary

concern presented in the case—appellant's continued association with gang members and associates and others involved with firearms. One of appellant's probation conditions required him not to associate with any person he knows, or the probation officer informs him, to be a gang member. Another required him to have no association with specified individuals and expressly stated, "You are not to communicate with them in person, by telephone, email, voicemail, pager code, letter, any social media, Facebook, Twitter, Instagram or message through someone else. If you should accidentally run into each other in a public place, . . . you are to go in the other direction; because if you are caught, you are the one who will be in violation of this court order." Appellant's cell phone and digital accounts are the obvious means by which he could communicate with the prohibited individuals. Access to appellant's cell phone or other digital devices in his possession and to his email and social media accounts, by allowing the probation officer to monitor appellant's compliance with these other conditions of probation, reasonably relates to future criminality by enabling the probation officer to supervise him more effectively. (*In re P.O, supra,* 246 Cal.App.4th at p. 295; *Olguin, supra,* 45 Cal.4th at pp. 380-381.)

As presently phrased, however, the electronics search condition imposes no limit on the type of data subject to search, potentially allowing access to private information such as medical or financial records that have nothing to do with illegal activity and are "highly unlikely to shed any light on whether [appellant] is complying with other conditions of his probation. . . ." (*In re P.O., supra,* 246 Cal.App.4th at p. 298.) In this, the condition is overbroad because it is "not narrowly tailored to its purpose of furthering [appellant's] rehabilitation." (*Ibid.*)

"In an appropriate case, a probation condition that is not sufficiently precise or narrowly drawn may be modified in this court and affirmed as modified. (See, e.g., *Sheena K., supra*, 40 Cal.4th at p. 892; *People v. Lopez* (1998) 66 Cal.App.4th 615, 629.)" (*In re Malik J., supra,* 240 Cal.App.4th at p. 901.) Here, the condition must be modified to limit authorization of warrantless searches of appellant's electronic devices and accounts to data and communications reasonably likely to reveal whether he is

19

communicating or associating with individuals specifically prohibited by the court or known to appellant to be gang members, or otherwise involved with firearms. (See *In re P.O., supra,* 246 Cal.App.4th at p. 298.)

## DISPOSITION

The electronics search condition is modified to require appellant to "submit all electronic devices under your control to a search of any text messages, voicemail messages, call logs, photographs, email accounts and social media accounts, with or without a search warrant, at any time of the day or night, and provide the probation or peace officer with any passwords necessary to access the information specified."

As so modified, the orders are affirmed.

_____
Kline, P.J.

We concur:


_____
Stewart, J.


_____
Miller, J.


*In re R.F.* (A145723)

21